IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ENZOLYTICS, INC,

    Plaintiff/Counterclaim Defendant,

v.

KONA CONCEPTS, INC.,

    Defendant/Counterclaim Plaintiff.

C.A. No.: 1:21-cv-01600-RGA

**FIRST AMENDED COUNTERCLAIM**

Defendant/Counterclaim Plaintiff, Kona Concepts, Inc. ("Kona"), by and through its undersigned counsel, brings this First Amended Counterclaim against it by Plaintiff/Counterclaim Defendant, Enzolytics, Inc. ("Plaintiff" or "ENZC"), by and through undersigned counsel, states as follows:

**PARTIES**

1. Kona is a corporation duly formed in Nevada that maintains its principal office and place of business in Boca Raton, Florida.

2. Peter Aiello ("Aiello") is an individual residing in the State of Florida.

3. Aiello is the sole shareholder of Kona.

4. At all times relevant, Aiello was a shareholder of Enzolytics.

5. Counterclaim Defendant Enzolytics, Inc. was incorporated in Delaware in 2004 as "T&T Homes Limited." The entity's name changed several times over the years. As relevant here, the entity changed its name on the following dates: in March 2009, to Extreme Mobile Coatings Worldwide Corp.; in November 2012, to Eco-Petroleum Solutions, Inc.; in January 2018, to Enzolytics, Inc.; at some point prior to November 16, 2020, to ENZC SUB, Inc.

6. Counterclaim Defendant Enzolytics, Inc. and its predecessors will hereinafter be

referred to as "Enzolytics."

7. Upon information and belief, Billy V. Ray ("Ray") is an individual and an officer of Enzolytics.

8. In 2014, Ray was convicted of Securities Fraud in the United States District Court for the Southern District for the Southern of Florida and sentenced to eight months in prison.

9. In 2014 Ray was permanently enjoined from acting as an officer or director of publicly traded companies such as Enzolytics.

10. Harry Zhabilov ("Zhabilov") is an individual and an officer of Enzolytics.

11. Charles Cotropia ("Cotropia") is an individual and an officer of Enzolytics.

12. Livingston Asset Management ("Livingston") is a Florida limited liability company that maintains its principal office and place of business in the State of Florida.

13. Livingston also has an office at 850 Third Avenue, Suite 16C, New York, NY 10022.

14. Livingston is owned and managed by Steven Hicks ("Hicks").

15. Southridge Partners II ("Southridge") is a Delaware general partnership.

16. Hicks is also the manager of Southridge.

17. In August 2017, the United States District Court for the District of Connecticut entered judgment against Hicks and Southridge in excess of $5,000,000 for misappropriation of clients' funds.

18. Seacor Capital Inc. ("Seacor") is a New York corporation that maintains its principal office and place of business at 850 Third Avenue, Suite 16C, New York, NY 10022.

19. Seacor is nominally owned by Lisa Ficarra but is managed by her husband, Charles Divillio ("Divillio").

20. In 2006, Divillio was convicted of Conspiracy to commit Securities fraud in the Eastern District of New York and sentenced to five months in prison.

21. Sky Direct, LLC ("Sky Direct"), is a New York limited liability company that maintains its principal office and place of business at 850 Third Avenue, Suite 16C, New York, NY 10022.

22. Sky Direct is nominally owned by Darlene Pergola and managed by her husband Steven Apolant ("Apolant").

23. In 2004 the SEC filed securities fraud charges against Apolant.

24. Apolant has been barred by state authorities in Georgia and New Jersey from participating in the sale of securities in those states.

25. Southridge, Livingston, Seacor and Sky Direct all share offices at 850 Third Avenue, Suite 16C, New York, NY 10022.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332, as complete diversity exists between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

27. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as this is a judicial district in which a substantial part of the events or omissions giving rise to the dispute have occurred.

## FACTUAL BACKGROUND

### Kona Note

28. On March 9, 2017, Kona entered a Convertible Promissory Note (the "Kona Note") with Enzolytics, Inc.'s predecessor-in-interest, Eco-Petroleum Solutions, Inc. (hereinafter "Enzolytics"). A true and correct copy of the KONA Note is attached as Exhibit 1.

29. Under the terms of the KONA Note, Kona provided approximately $100,000.00 at an 8% annual interest rate to Enzolytics in exchange for its promise to pay the accumulated principal and interest under the KONA Note.

30. Under the KONA Note terms, Kona had the option convert the KONA Note into shares of Enzolytics' common stock in lieu of demanding payment.

31. The KONA Note did not impose any time limit on Kona's exercise of its right to convert.

32. The KONA Note provided that Enzolytics "waives presentment, demand for performance, notice or non-performance, protest, notice of protest and notice of dishonor."

33. The KONA Note also provided that no "delay on the part of the holder in exercising any right hereunder" by Kona would waive Kona's right to pursue payment or convert the shares.

### The Section 251(g) Merger

34. On or about November 19, 2020, Enzolytics purported to affect a reorganization of its corporate structure pursuant to Delaware General Corporation Law (the "Merger").

35. Prior to the Merger, in 2017, Sky Direct and Seacor approached Enzolytics through Ray and Zhabilov to create debt in the company and create other classes of stock on extremely favorable terms.

36. These terms were unfavorable to the common shareholders and existing convertible debtholders such as Kona without approval or notice.

37. From 2017 through 2019, Enzolytics issued approximately 24 Note to Seacor and 15 Note to Sky Direct one note to Southridge (the "Seacor/Sky Direct/Southridge Note").

38. The Seacor/Sky Direct/Southridge Note were similar to the Kona Note, albeit with more favorable terms.

4

39. Sky Direct and Seacor and their undisclosed ownership, control persons, used these transactions as a reserve bank to buy below market shares and then sell them at higher prices, then buying more shares back from Livingston and also selling them into the markets, to only reinvest the sale proceeds back into the Enzolytics, in effect an illegal Statutory Underwriting.

40. Beginning in or around May 2020, Kona contacted Enzolytics, Inc. through Zhabilov and Ray, about providing additional funding to Enzolytics.

41. Ray responded on behalf of Enzolytics, Inc. indicating the company did not have any immediate needs for additional funding but suggested the company would review terms for funding in the near future.

42. Ray expressly indicated he should be copied on all future communications from Kona to Enzolytics.

43. On September 4, 2020, Ray emailed Kona copying Cotropia and Zhabilov outlining Enzolytics existing debt.

44. On September 6, 2020, Ray emailed Kona copying Cotropia and Zhabilov, and provided additional information concerning Enzolytics existing debt.

45. On September 6, 2020, Kona informed Enzolytics that it desired to move forward with the discussed financing projects.

46. On October 5, 2020, Cotropia suggested a call between himself, Ray and Kona.

47. On October 9, 2020, Cotropia Ray and Kona discussed the financing projects.

48. On October 27, 202, Ray emailed Kona, copying Charles and Harry, asking for term sheet and proposed take-out funding.

49. On November 14, 2020, Kona gave Enzolytics notice through Ray that it wanted to convert the Kona Note.

50. On November 15, 2020, Kona reiterated is notice to Enzolytics through Ray that it wanted to convert the Kona Note.

51. On November 15, 2020, Ray informed Kona that it was going to have to wait because of his "situation."

52. On November 15, 2020, Ray followed up with another email on indicating Kona would need to provide an opinion letter prior to any conversion and indicating Enzolytics would not be initiating any conversions until November 26 at the earliest.

53. On November 16, 2020, despite Ray informing Kona that Enzolytics would not be initiating any conversions until November 26th at the earliest, Enzolytics did, in fact, convert the Seacor/Sky Direct Note.

54. The Seacor/Sky Direct/Southridge Note were converted with the help, advice, and assistance of Ray.

55. The Seacor/Sky Direct/Southridge Note were converted, while Kona's were not, because of the close relationship between the principals of Seacor and Sky Direct Note and management team of Ray, Zhabilov and Cotropia.

56. Upon information and belief, the Merger was perpetrated fraudulently and for the purpose of depriving shareholders, such as Kona, of their standing to bring a derivative action.

**Failure to Give Notice to the Section 251(g) Merger**

57. Section 3 of the Kona Note provides that Kona's right to convert the note upon "(ii) change in control of the company, (iii) the filing of a registration statement or offering."

58. Implicit in sections 3(i) and 3(iii) is that Enzolytics to give notice to Kona of any impending "change in control of the company" or "filing of a registration statement or offering."

59. Enzolytics failed to give Kona notice of the Merger as obligated to under Section 9

of the Kona Note.

60.     Enzolytics has failed to issue Kona shares of the successor company as obligated to under the Kona Note.

## COUNT I

### Breach of Contract

61.     The Kona Note is a valid contract between Enzolytics and Kona.

62.     Kona has performed all its obligations under the contract.

63.     Enzolytics failure to give Kona notice of the Merger as obligated to under Section 3 of the Kona Note constitutes a breach of contract.

64.     Enzolytics failure to issue Kona shares of the successor company as obligated under the Kona Note constitutes a breach of contract.

65.     As of the filing of this complaint, Enzolytics has refused to issue its shares to Kona in violation of the Kona Note despite written demand for same.

66.     Kona has suffered damages as a result of Enzolytics breach of contact.

67.     If the Kona Note had been properly converted, Kona would have received 9,703,720 shares of Enzolytics, Inc.

68.     On or about November 30, 2020, the value of Enzolytics' common stock was approximately $0.11 per share.

## PRAYER FOR RELIEF

WHEREFORE, as a result of these breaches, Enzolytics, Inc. directly and proximately caused Defendant/Counterclaim Plaintiff Kona Concepts, Inc. damages in the amount in excess of $75,000, excluding interest and fees. Additionally, pre-judgment interest, attorneys' fees, and costs and expenses allowed by applicable law and due under the Note continue to accrue.

Respectfully submitted,

*/s/ Kaan Ekiner*
Kaan Ekiner, Esq. (#5607)
**COZEN O'CONNOR**
1201 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2046
kekiner@cozen.com

John J. Muldoon III, Esq. (admitted *pro hac vice*)
**MULDOON & MULDOON, LLC**
111 West Washington Street
Suite 1500
Chicago, IL 60602
(312) 739-3550
jjm@muldoonlaw.com

*Counsel for Defendant, Counterclaim Plaintiff Kona Concepts, Inc.*

Dated: April 14, 2022