IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENZOLYTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> KONA CONCEPTS, INC., <br><br> Defendant. | C.A. No.: 21-1600-RGA |

**DEFENDANT/COUNTERCLAIM PLAINTIFF KONA CONCEPTS, INC.'S
SECOND AMENDED COUNTERCLAIM**

Defendant/Counterclaim Plaintiff, Kona Concepts, Inc., by and through its undersigned counsel, brings this Second Amended Counterclaim against Plaintiff/Counterclaim Defendant, Enzolytics, Inc. and states as follows:

**PARTIES**

1. Kona Concepts, Inc. ("Kona") is a corporation duly formed in Nevada that maintains its principal office and place of business in Boca Raton, Florida.

2. Peter Aiello ("Aiello") is an individual residing in the State of Florida.

3. Aiello is the sole shareholder of Kona.

4. At all times relevant, Aiello was a shareholder of Enzolytics, Inc.

5. Enzolytics, Inc. was incorporated in Delaware in 2004 as "T&T Homes Limited." The entity's name changed several times over the years. As relevant here, the entity changed its name on the following dates: in March 2009, to Extreme Mobile Coatings Worldwide Corp.; in November 2012, to Eco-Petroleum Solutions, Inc.; in January 2018, to Enzolytics, Inc.; at some point prior to November 16, 2020, to ENZC SUB, Inc. Enzolytics, Inc. and its predecessors will hereinafter be referred to as "Enzolytics" or "ENZC."

1

6. Billy V. Ray ("Ray") is an individual and, upon information and belief, an officer, or *de facto* officer of Enzolytics.

7. Up until the events relevant to this counterclaim, Aiello and Ray were close personal friends.

8. In 2014, Ray was convicted of Securities Fraud in the United States District Court for the Southern District for the Southern of Florida and sentenced to eight months in prison.

9. In 2014, Ray was permanently enjoined from acting as an officer or director of publicly traded companies such as Enzolytics.

10. Harry Zhabilov ("Zhabilov") is an individual and an officer of Enzolytics.

11. Up until the events relevant to this counterclaim, Aiello and Zhabilov were close personal friends.

12. Charles Cotropia ("Cotropia") is an individual and the Chief Executive Officer ("CEO") of Enzolytics.

13. Livingston Asset Management ("Livingston") is a Florida limited liability company that maintains its principal office and place of business in the State of Florida.

14. Livingston also has an office at 850 Third Avenue, Suite 16C, New York, NY 10022.

15. Livingston is owned and managed by Steven Hicks ("Hicks").

16. Southridge Partners II ("Southridge") is a Delaware general partnership.

17. Hicks is also the manager of Southridge.

18. In August 2017, the United States District Court for the District of Connecticut entered judgment against Hicks and Southridge in excess of $5,000,000 for misappropriation of clients' funds.

19. Seacor Capital Inc. ("Seacor") is a New York corporation that maintains its principal office and place of business at 850 Third Avenue, Suite 16C, New York, NY 10022.

20. Seacor is nominally owned by Lisa Ficarra but is managed by her husband, Charles Divillio ("Divillio").

21. In 2006, Divillio was convicted of Conspiracy to commit Securities fraud in the Eastern District of New York and sentenced to five months in prison.

22. Sky Direct, LLC ("Sky Direct"), is a New York limited liability company that maintains its principal office and place of business at 850 Third Avenue, Suite 16C, New York, NY 10022.

23. Sky Direct is nominally owned by Darlene Pergola and managed by her husband Steven Apolant ("Apolant").

24. In 2004 the SEC filed securities fraud charges against Apolant.

25. Apolant has been barred by state authorities in Georgia and New Jersey from participating in the sale of securities in those states.

26. Southridge, Livingston, Seacor and Sky Direct all share offices at 850 Third Avenue, Suite 16C, New York, NY 10022.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332, as complete diversity exists between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

28. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as this is a judicial district in which a substantial part of the events or omissions giving rise to the dispute have occurred.

## FACTUAL BACKGROUND

### Kona Note

29. On March 9, 2017, Kona entered a 12% Convertible Promissory Note (the "Kona Note") with Enzolytics, Inc.'s predecessor-in-interest, Eco-Petroleum Solutions, Inc. A true and correct copy of the Kona Note is attached as Exhibit A.

30. Under the terms of the Kona Note, Kona provided approximately $25,000.00 at an 12% annual interest rate to Enzolytics in exchange for its promise to pay the accumulated principal and interest under the Kona Note.

31. Under the Kona Note terms, Kona had sole discretion to elect to convert the Note into shares of ENZC common stock.

32. The Kona Note did not impose any time limit on Kona's exercise of its right to convert.

33. The Kona Note provided that Enzolytics "waives presentment, demand for performance, notice or non-performance, protest, notice of protest and notice of dishonor."

34. The Kona Note also provided that no "delay on the part of the holder in exercising any right hereunder" by Kona would waive Kona's right to pursue payment or convert the shares.

### The Section 251(g) Merger

35. On or about November 16, 2020, Enzolytics purported to effect a reorganization of its corporate structure pursuant to Delaware General Corporation Law (the "Merger").

36. Prior to the Merger, in 2017, Sky Direct and Seacor approached Enzolytics through Ray and Zhabilov to create debt in the company and create other classes of stock on extremely favorable terms.

37. These terms were unfavorable to the common shareholders and existing convertible debtholders such as Kona without approval or notice.

38. From 2017 through 2019, Enzolytics issued approximately 24 notes to Seacor, 15 notes to Sky Direct, and one note to Southridge (the "Seacor/Sky Direct/Southridge Notes").

39. The Seacor/Sky Direct/Southridge Notes were similar to the Kona Note, albeit with more favorable terms.

40. Sky Direct and Seacor and their undisclosed ownership and control persons used these transactions as a reserve bank to buy below market shares and then sell them at higher prices, then buying more shares back from Livingston and also selling them into the markets, to only reinvest the sale proceeds back into the Enzolytics, in effect an illegal Statutory Underwriting.

41. Beginning in or around May 2020, Kona contacted Enzolytics, Inc. about providing additional funding to Enzolytics.

42. On October 5, 2020, CEO Cotropia suggested a call between himself, Ray and Kona. *See* Exhibit B.

43. On October 9, 2020, CEO Cotropia, Ray and Kona discussed the financing projects.

44. On October 27, 2020, Ray emailed Kona, copying CEO Cotropia and Zhabilov, wherein he, on behalf of ENZC informed Kona that:

   a. CEO Cotropia and Zhabilov stated that Ray was to "handle" the funding issues;

   b. The company did not have any immediate need for additional funding, but suggested the company would review terms for funding in the near future;

   c. Kona should a tender term sheet and proposed take-out funding; and

   d. Ray should be copied on all future communications from Kona to Enzolytics.

*See* Exhibit C.

45. On November 14, 2020, Kona provided Enzolytics notice through Ray for

conversion of the Kona Note. *See* Exhibit D.

46. On November 15, 2020, Kona reiterated its notice to Enzolytics through Ray that for conversion of the Kona Note. *See* Exhibit E.

47. On November 15, 2020, Ray informed Kona that it was going to have to wait because of his "situation." *See* Exhibit F.

48. On November 16, 2020, Ray followed up indicating Kona would need to provide an opinion letter prior to any conversion and indicating Enzolytics would not be able to initiate any conversions until November 26, at the earliest. *See* Exhibit G.

49. On or about November 16, 2020, despite Ray informing Kona that Enzolytics would not be initiating any conversions until November 26, at the earliest, Enzolytics did, in fact, convert the Seacor/Sky Direct/Southridge Notes.

50. The Seacor/Sky Direct/Southridge Notes were converted with the help, advice, and assistance of Ray.

51. The Seacor/Sky Direct/Southridge Notes were converted, while Kona's were not, because of the close relationship between the principals of Seacor and Sky Direct and the management team of Ray, Zhabilov and Cotropia.

52. Enzolytics' intent through Ray's emails of November 14, 15, and 16 was to deceive Kona by lulling Aiello into a false sense of security that conversions could not occur until November 26, 2020, at the earliest.

53. Enzolytics sent Kona Ray's emails of November 14, 15, and 16 in order to have Kona rely upon the false representations made that conversions could not occur until November 26, 2020, at the earliest.

54. Kona justifiably relied upon the emails Enzolytics sent to it on November 14, 15,

and 16 that conversion could not occur until November 26, 2020, at the earliest.

55. The Merger was consummated on or about November 16, 2020 and insiders were permitted conversions prior to November 26, 2020. *See* Exhibit H.

56. Enzolytics intentionally strung Kona along, including, even, *on the day* the Merger was consummated, in order to avoid conversion under the Kona Note.

57. One of the surviving entities from the Merger is Enzolytics, which is a publicly traded biotechnology company.

58. Debtholders that were permitted conversions were issued shares of common stock in Enzolytics.

59. Upon information and belief, the Merger was perpetrated fraudulently and for the purpose of depriving shareholders, such as Kona, of their standing to bring a derivative action.

## Kona has Suffered Monetary Damages

60. To date, Enzolytics has refused to convert the Kona Note into shares of the public company as obligated under the Kona Note.

61. If the Kona Note had been properly converted, Kona would have received 9,703,720 shares of Enzolytics common stock.

62. On or about November 30, 2020, the value of Enzolytics' common stock was approximately $0.11 per share.

63. Kona has suffered monetary damages as a result of Enzolytics' failure to convert the Kona Note into shares of the public company as obligated under the Kona Note.

64. Kona's Second Amended Counterclaim seeks to recover the monetary damages it suffered as a result of Enzolytics' failure to convert the Kona Note into shares of the public company as obligated under the Kona Note.

65. As Kona's Second Amended Counterclaim seeks monetary damages, it is not

identical to Enzolytics' Complaint which seeks a declaratory judgment.

66. As it is clear that there is not "a complete identity of factual and legal issues between [Enzolytics'] complaint and [Kona's Second Amended] counterclaim[,]" they are not redundant. *See Aldens, Inc. v. Packel,* 524 F.2d 38, 52 (3rd Cir. 1975).

## COUNT I

## **EQUITABLE ESTOPPEL**

67. Kona repeats and realleges the allegations of Paragraphs 1 through 66 above, as if fully set forth herein.

68. In his communications with Kona, Ray held himself out as an officer of ENZC, or, was acting as a *de facto* officer for ENZC.

69. Ray, in an email where he copied CEO Cotropia and Zhabilov, informed Kona that all future communications, including those concerning funding, should be directed to him.

70. As such, Kona formed a reasonable belief that Ray was authorized to communicate with it concerning the conversion of the Kona Note.

71. Ray had the authority, or at least held himself out to have the authority, to bind ENZC.

72. Ray was taking action in the name of ENZC through his communications with Kona in November 2020.

73. ENZC, through Ray, made false representations and concealed material facts from Kona in email communications in November of 2020, including that:

    a. ENZC could not initiate any conversions until November 26, 2020, at the earliest;

    b. Kona would need to provide an opinion letter prior to any conversion; and

    c. Kona had to wait to convert the Kona Note because of Ray's "situation."

74. At the time these communications were made, Ray, and ENZC, were aware that these statements were false.

75. At the time these communications were made, Ray, and ENZC, were aware of the real facts, including the following:

    a. ENZC had planned to and was in the process of effecting a Section 251(g) merger on November 16, 2020;

    b. ENZC had notified other debtholders that there was going to be a Section 251(g) merger effected on November 16, 2020;

    c. Other debtholders, namely insiders, were permitted to effect conversions prior to November 26, 2020; and

    d. Kona would be required to tender a notice of conversion promptly, and not in a matter of weeks, as represented by Ray.

76. Meanwhile, other debtholders, including insiders and colleagues of Ray were converted with the help, advice, and assistance of Ray, to include the Seacor/Sky Direct/Southridge Debentures.

77. The false representations made by Ray on behalf of ENZC were intended to purposefully string Kona along until the Merger was consummated in order to avoid conversion under the Kona Note.

78. Kona's reliance on ENZC's false representations made through Ray was in good faith and justifiable.

79. Based exclusively on ENZC's false representations, made through Ray, Kona changed its position to its disadvantage as Kona was deceived into believing that it did not have to promptly submit a notice of conversation.

80. Kona's justifiable reliance upon ENZC's false representations made through Ray caused Kona monetary damages.

81. To date, Enzolytics has refused to issue shares of common stock in the publicly traded company to Kona.

82. By reason of the foregoing, Enzolytics should be equitably estopped from refusing to convert the Kona Note.

## COUNT II

## FRAUDULENT MISREPRESENTATION

83. Kona repeats and realleges the allegations of Paragraphs 1 through 82 above, as if fully set forth herein.

84. ENZC, through Ray, misrepresented material facts to Kona in email communications in November of 2020, including that:

    a. ENZC could not initiate any conversions until November 26, 2020, at the earliest;

    b. Kona would need to provide an opinion letter prior to any conversion; and

    c. Kona had to wait to convert the Kona Note because of Ray's "situation."

85. At the time these communications were made, Ray, and ENZC, were aware that these statements were false.

86. The misrepresentations made by ENZC were made for the purpose of inducing Kona to rely on them so that Kona would fail to provide for timely notice of conversion, and so that ENZC could avoid conversion under the Kona Note.

87. Kona's reliance on ENZC's false representations made through Ray was in good faith and justifiable.

88. Based exclusively on ENZC's false representations, made through Ray, Kona changed its position to its disadvantage as Kona was deceived to believe that it did not have to promptly submit a notice of conversation.

89. Kona's justifiable reliance upon ENZC's false representations made through Ray caused Kona monetary damages.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Counterclaim Plaintiff Kona Concepts Inc. prays for judgment as follows:

A. Denying Plaintiff/Counterclaim Defendant Enzolytics, Inc.'s requests for relief;

B. Ordering Plaintiff/Counterclaim Defendant Enzolytics, Inc. to convert the Kona Note into shares of the publicly traded company or to pay Defendant/Counterclaim Plaintiff Kona Concept Inc. monetary damages in an amount in excess of $75,000 to be determined at trial;

C. Awarding Defendant/Counterclaim Plaintiff Kona Concepts Inc. pre-judgment interest, attorneys' fees, costs, and expenses; and

D. Granting Defendant/Counterclaim Plaintiff Kona Concepts Inc. such other and further relief in law and equity, as the Court may deem just and proper.

Respectfully submitted,

*/s/ Kaan Ekiner*
Kaan Ekiner, Esq. (#5607)
**COZEN O'CONNOR**
1201 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2046
kekiner@cozen.com

|  |  |
|---|---|
|  | John J. Muldoon III, Esq. (admitted *pro hac vice*)<br>**MULDOON & MULDOON, LLC**<br>111 West Washington Street<br>Suite 1500<br>Chicago, IL 60602<br>(312) 739-3550<br>jjm@muldoonlaw.com<br>*Attorneys for Defendant, Counterclaim Plaintiff Kona Concepts, Inc.* |
| Dated: February 27, 2023 |  |