# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ENZOLYTICS, INC,

      Plaintiff/Counterclaim Defendant,

      v.

KONA CONCEPTS, INC.,

      Defendant/Counterclaim Plaintiff.

C.A. No.: 1:21-cv-01600-RGA

**DEFENDANT/COUNTERCLAIM PLAINTIFF KONA CONCEPTS, INC.'S
ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF/COUNTERCLAIM
DEFENDANT ENZOLYTICS, INC.'S MOTION TO DISMISS**

*/s/ Kaan Ekiner*
Kaan Ekiner (#5607)
COZEN O'CONNOR
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
302-295-2046
kekiner@cozen.com

John J. Muldoon III (*pro hac vice*)
MULDOON & MULDOON, LLC
111 West Washington Street
Suite 1500
Chicago, IL 60602
(312) 739-3550
jjm@muldoonlaw.com

Dated: March 28, 2023

*Attorneys for Defendant/Counterclaim
Plaintiff Kona Concepts, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

NATURE AND STAGE OF PROCEEDINGS.......................................................................... 1

SUMMARY OF ARGUMENT.............................................................................................. 2

STATEMENT OF FACTS..................................................................................................... 4

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

   A. KONA'S COUNTERCLAIMS FOR EQUITABLE ESTOPPEL AND
      FRAUDULENT INDUCEMENT ARE NOT REDUNDANT TO ENZC'S
      DECLARATORY JUDGMENT CLAIM ........................................................... 6

      1. The Factual and Legal Issues Raised in ENZC's Complaint for Declaratory
         Judgment are Not Completely Identical to the Factual and Legal Issues Raised in
         Kona's Tort Causes of Action in the SACC. ................................................ 7

      2. Resolution of ENZC's Declaratory Judgment Claim Does Not Resolve
         Kona's Tort Claims or Render Its Tort Claims Moot. .................................. 9

   B. KONA PLAUSIBLY PLEADS THAT ENZC MADE FALSE REPRESENTATIONS
      AND CONCEALED MATERIAL FACTS FROM KONA TO SUPPORT ITS
      COUNTERCLAIMS........................................................................................ 12

   C. KONA PLAUSIBLY PLEADS JUSTIFIABLE RELIANCE ON ENZC'S FALSE
      MISREPRESENTATIONS .............................................................................. 14

      1. Kona Alleges that Ray Acted with Authority or Apparent Authority on
         Behalf of ENZC. ........................................................................................ 14

      2. Kona Alleges that It Justifiably Relied on Ray's False Representations.................... 16

   D. KONA PLAUSIBLY PLEADS THAT IT CHANGED ITS POSITION TO ITS
      DETRIMENT, WHICH CAUSED ITS INJURY ............................................. 17

   E. ENZC'S REQUEST THAT KONA NOT BE PERMITTED ANY FURTHER
      AMENDMENTS TO ITS COUNTERCLAIM IS PREMATURE ................................. 18

CONCLUSION ................................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*,
    25 N.Y.3d 1043 (N.Y. 2015) ...................................................17

*Amusement Indus. v. Citigroup Global Mkts. Realty Corp.*,
    421 B.R. 659 (S.D.N.Y. 2009)..................................................14

*Armano v. Martin*,
    703 Fed. Appx. 111 (3d Cir. 2017)..........................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................6

*Bank Midwest, N.A. v. Hypo Real Estate Capital Corp.*,
    2010 WL 4449366 (S.D.N.Y. Oct. 13, 2010) ..........................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................6

*Besicorp Grp. Inc. v. Enowitz*,
    652 N.Y.S.2d 366 (3rd Dep't 1997) .........................................18

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)....................................................18

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
    323 F. Supp. 3d 393 (S.D.N.Y. 2018)......................................16

*Erickson v. Pardus*,
    551 U.S. 89 (2007)....................................................................6

*Foman v. Davis*,
    371 U.S. 178 (1962)..................................................................19

*Hamilton P'rs, L.P. v. Englard*,
    11 A.3d 1180 (Del. Ch. 2010)..................................................4

*HSMY, Inc. v. Getty Petroleum Mktg., Inc.*,
    417 F. Supp. 2d 617 (D. Del. 2006)..........................................16

*Huber Engineered Woods LLC v. Louisiana-Pac. Corp.*,
    2022 WL 18707841 (D. Del. Nov. 17, 2022) ..........................15

*IKB Int'l S.A. v. Morgan Stanley*,
  142 A.D.3d 447 (N.Y. App. Div. 1st Dep't 2016).................................................................17

*Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc.*,
  457 F. Supp. 1158 (E.D. Pa. 1978) ........................................................................................9

*Kirschner v. KPMG LLP*,
  938 N.E.2d 941 (N.Y. 2010) (Ciparick, J. (dissenting)).......................................................16

*LeMaster v. USAA Life Ins. Co.*,
  1995 WL 708656 (M.D. Fla. Nov. 27, 1995) ..................................................................10, 11

*Mun. Corp. v. Citigroup Global Mkts. Inc.*,
  555 F. App'x. 85 (2d Cir. 2014) ...........................................................................................15

*Nat. Trends v. Krimson Corp.*,
  1994 WL 97058 (S.D.N.Y. Mar. 23, 1994) ..........................................................................14

*In re Nigeria Charter Flights Contract Litig.*,
  520 F. Supp. 2d 447 (E.D.N.Y. 2007) ..................................................................................16

*Oxford Health Plans (N.Y.), Inc. v. Biomed Pharms., Inc.*,
  181 A.D.3d 808 (N.Y. App. Div. 2nd Dep't 2020) .................................................................8

*Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*,
  2021 WL 3794829 (D. Del. Aug. 26, 2021) ...............................................................7, 11, 12

*PHL Variable Ins. Co. v. Helene Small Ins. Tr. ex rel. Wilmington Sav. Fund Soc., FSB*,
  2012 WL 5382905 (D. Del. Nov. 1, 2012) ..............................................................................7

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Tr.*,
  674 F. Supp. 2d 562 (D. Del. 2009).........................................................................................8

*Principal Life Ins. Co. v. Weiss*,
  2009 WL 10687701 (E.D. Pa. July 30, 2009)........................................................................10

*Reach Acad. for Boys & Girls, Inc. v. Delaware Dep't of Educ.*,
  46 F. Supp. 3d 455 (D. Del. 2014)...........................................................................................5

*Rich v. Orlando*,
  128 A.D.3d 1330, 7 N.Y.S.3d 754 (2015) ..............................................................................8

*Tanzman v. La Pietra*,
  8 A.D.3d 706 (N.Y. App. Div. 3rd Dep't 2004) ...................................................................17

*In re Windsor Plumbing Supply Co.*,
  170 B.R. 503 (E.D.N.Y. 1944) ..............................................................................................15

*Wright v. Liguori*,
   2009 WL 3149777 (D. Del.) ...................................................................................6

**Statutes**

8 *Del. C.* § 251(g) ...................................................................................................5

**Other Authorities**

*ENZC*, OTC Mkts. Gp., https://www.otcmarkets.com/stock/ENZC/overview; ...........................4

Fed. R. Civ. P. 8 .......................................................................................................6

Fed. R. Civ. P 15(a) ...............................................................................................18

Fed. R. Civ. P 12(b)(6)........................................................................................5, 6

Defendant, Counterclaim Plaintiff Kona Concepts, Inc. ("Kona") submits this opposition to Plaintiff, Counterclaim Defendant Enzolytics, Inc.'s ("ENZC" or the "Company") Motion to Dismiss (the "Motion"). (D.I. 43) For the reasons below, the Motion should be denied.

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff initiated this action on November 12, 2021, seeking a declaratory judgment that it owes no obligations to Kona under a convertible promissory note entered into on March 9, 2017 (the "Note") (D.I. 1, ¶ 12) On March 4, 2022, Kona filed its Answer to the Complaint, Affirmative Defenses, and a Counterclaim for breach of contract. (D.I. 13) On April 19, 2022, Kona filed its First Amended Counterclaim for breach of contract ("FACC"). (D.I. 26) ENZC moved to dismiss the FACC on May 6, 2022. (D.I. 27) The motion to dismiss was referred to Magistrate Judge Sherry R. Fallon on July 15, 2022. (D.I. 33)

On February 6, 2023, Judge Fallon issued the Report and Recommendations ("R&R") on ENZC's motion to dismiss, recommending dismissal of the FACC. (D.I. 40) Amongst other findings, Judge Fallon held that Kona had, for the first time, asserted a new theory of equitable estoppel in its answering brief that was not sufficiently pled in its FACC. (*Id.* at 8) ENZC raised a redundancy argument in its motion, but Judge Fallon did not decide that issue because it was rendered moot. Kona was granted leave to amend its counterclaim. (*Id.* at 10)

Kona filed its Second Amended Counterclaim ("SACC") on February 27, 2023. (D.I. 40) (the "SACC") There, Kona asserts two tort claims—equitable estoppel and fraudulent inducement—arising out of ENZC's deliberate attempts to deny Kona the lawful conversion of its debt into stock. The R&R was adopted by the Court on February 28, 2023. (D.I. 41).

ENZC filed the Motion on March 14, 2023. (D.I. 44) Throughout the Motion, ENZC cherry picks quotations and takes Judge Fallon's findings in the R&R out of context in an attempt to support conclusions that it wants the Court to reach now. For example, Judge Fallon did not find

1

that the communications from Billy V. Ray to Peter Aiello "do not support Kona's equitable estoppel claim." (D.I. 45 at 12) Judge Fallon found that even if the Court considers the full content of the emails, they are not sufficient to support the equitable estoppel claim Kona "now asserts" because ***no such claim was actually pleaded*** in the FACC. (D.I. 40 at 9) That distinction is critical. Also omitted is the next sentence from the R&R, which provides: "[t]he FACC fails to allege any facts supporting the elements of equitable estoppel nor does the FACC even mention the phrase." (D.I. 40 at 9) For another example, ENZC takes Judge Fallon's conclusion that "Kona's argument that Ray's title imbues him with apparent authority is unsupported" completely out of context. (D.I. 45 at 12) Judge Fallon found that "[t]he only allegation ***in the FACC*** is that Ray is 'an individual and an officer of [ENZC]…'" and that "nothing further [is] alleged about his apparent authority or Kona's reliance on it for an equitable estoppel claim." (D.I. 40 at 9) (emphasis added). Which makes sense, because an equitable estoppel claim was not asserted in the FACC.

## SUMMARY OF ARGUMENT

This dispute arises out of Kona's attempts to enforce its contractual right under the Note to convert its debt in ENZC's predecessor-in-interest into shares of ENZC common stock. ENZC filed this declaratory judgment action seeking only a judicial declaration that ENZC does not owe any contractual obligation to Kona under the Note. (D.I. 1; D.I. 45 at 3) Resolution of ENZC's claim will require the Court to interpret the contractual provisions governing conversion in the Note and make findings based on a narrow set of facts concerning Kona's attempted conversions, in November of 2020.

Kona's SACC pulls back the curtain. Kona alleges two separate tort claims for equitable estoppel and fraudulent misrepresentation which, necessarily, involve distinct facts and legal issues from those raised in the Complaint. For the Court to resolve the claims asserted in the SACC, it will have to make findings based on a much broader set of facts concerning false representations

made by the officers or *de facto* officers of ENZC and its predecessor-in-interest to Kona in a calculated effort to delay Kona's timely conversion of its debt.

Despite the lack of identity, let alone *complete* identity in fact and law, ENZC argues in its Motion that the tort claims raised in the SACC are redundant of the claim raised in its Complaint for declaratory judgment. None of the allegations or legal issues concerning ENZC's false representations and delay tactics, as alleged in the SACC, are raised in the Complaint. Further, resolution of ENZC's declaratory judgment claim would not necessarily resolve Kona's interests as presented in the SACC. A ruling adverse to ENZC on its declaratory judgment claim does not moot Kona's claims or entitle Kona to the affirmative relief that it is seeking in the SACC—which is distinct from the declaratory relief ENZC seeks. On the latter point, Kona's request for damages is determinative, as a counterclaim that seeks different relief, in this case, monetary damages, goes "beyond the scope of the complaint" as a matter of law.

ENZC fares no better in challenging that Kona has failed to plead facts to support its equitable estoppel and fraudulent misrepresentation claims. Kona easily clears the bar, alleging that, in response to its attempts to provide written notices of conversion, ENZC made false representations and concealed material facts from Kona concerning the requirements for converting debt and ENZC's ability to initiate conversions during a certain time period.

At the time these false representations were made, the real facts were known to ENZC, including that ENZC was in the process of effecting a merger, other insider debtholders were aware that the merger was going to be effected and were permitted to effect conversions (during the time period in which it was represented to Kona that conversions could not be initiated), and that Kona would need to tender a notice of conversion promptly in order to convert its stock, and not in a matter of weeks, as was represented. Kona justifiably relied on ENZC's false representations and

changed its position to its detriment as the merger closed and Kona was not permitted to convert its debt into the stock of ENZC—a publicly traded company.[1]

**STATEMENT OF FACTS**

Kona entered into the Note with ENZC's predecessor-in-interest, Eco-Petroleum Solutions, Inc.[2] on March 9, 2017. (D.I. 40 ¶ 29; Ex. A) Kona invested a total of $25,000 and had the contractual right to convert the debt into shares of common stock. (D.I. 40 at ¶¶ 29-34)

Harry Zhabilov and Charles Cotropia are directors and officers of ENZC. (*Id.* at ¶¶ 10, 12) Billy V. Ray is, upon information and belief, an officer or *de facto* officer of ENZC. (*Id.* at ¶ 6) Peter Aiello is the sole shareholder of Kona. (*Id.* at ¶ 3) Aiello was personal friends with Zhabilov and Ray until the events occurred that are relevant to this dispute. (*Id.* at ¶¶ 7, 11)

From 2017 to 2019, ENZC issued debentures to other entities owned and operated by individuals with close personal ties to Ray and Zhabilov. (*Id.* at ¶¶ 36, 38) This included Southridge Partners II, Seacor Capital Inc. and Sky Direct, LLC (the "Insider Debtholders") (*Id.* at ¶¶ 38-40).

Beginning in May 2020, Kona contacted ENZC about providing additional funding. (*Id.* at ¶ 41) Ultimately, Cotropia, the CEO of ENZC, suggested a call between himself, Ray, and Aiello. (D.I. 40 at ¶ 42; Ex. B). That call occurred on October 9, 2020. (*Id.* at ¶ 43). On October 27, 2020, in response to a text message that Aiello sent to Cotropia, Ray emailed Aiello on behalf of ENZC, copying Cotropia and Zhabilov, and informed Aiello that: (i) Cotropia and Zhabilov directed Ray

---

[1] The Company issues penny stocks that trade over the counter for less than $0.05 per share. *See ENZC*, OTC Mkts. Gp., https://www.otcmarkets.com/stock/ENZC/overview; *see generally Hamilton P'rs, L.P. v. Englard*, 11 A.3d 1180, 1189 n.3 (Del. Ch. 2010) ("I use the term 'penny stock' colloquially to refer to a speculative security, typically trading on the pink sheets … often for less than $3 per share … and for which little information is available to investors. Penny stocks have long provided opportunities for the unscrupulous to engage in fraud.").

[2] As alleged in the SACC, (D.I. 40 at ¶ 5), the entity currently known as Enzolytics, Inc. was initially incorporated in Delaware in 2004 and changed its name several times over the year until the merger that was consummated in November 2020. For ease of reference, Kona will refer to ENZC and its predecessors-in-interest as "ENZC" or the "Company" in this brief.

4

to "handle" the funding issues; (ii) the Company did not have an immediate need for additional funding; (iii) Kona should tender a term sheet and proposed take-out funding; and (iv) Ray should be copied on all future communications from Kona to ENZC. (*Id.* at ¶ 44; Ex. C)

On November 14, 2020 Kona provided ENZC, through Ray and Zhabilov, with written notice of conversion relating to the Note. (*Id.* at ¶ 45; Ex. D) On November 15, 2020, Kona reiterated its written notice of conversion to Ray and Zhabilov. (*Id.* at ¶ 46; Ex. E) In response, on November 15, 2020, Ray emailed Aiello and Zhabilov that Kona would have to wait because of his "situation." (*Id.* at ¶ 47; Ex. F) Ray sent another email to Aiello on November 16, 2020, this time not including Zhabilov, and for the first time, advised that Kona would need to provide an opinion letter prior to any conversion and that ENZC would not be able to initiate any conversions until November 26, 2020, at the earliest. (*Id.* at ¶ 48; Ex. G)

During this time period, and despite Ray's representations on behalf of ENZC to Kona, ENZC converted the Insider Debtholders' debt due to their principals' close relationship with Ray, Zhabilov, and Cotropia. (*Id.* at ¶¶ 49-51) To its detriment, Kona relied on Ray's representations on November 15 and 16, 2020 that conversions would not occur until November 26, 2020, at the earliest. But *on the same day* Ray sent Aiello that email, ENZC consummated a merger pursuant to 8 *Del. C.* § 251(g) (the "Merger"). (*Id.* at ¶ 55; Ex. H) Kona was not provided any notice of the Merger and the consequence of the Merger was that Kona would be precluded from exercising its right to convert its debt into shares of the publicly traded company, ENZC. (*Id.* at ¶ 56) Debtholders, such as the Insider Debtholders, that were permitted conversions, were issued shares of common stock of ENZC. (*Id.* at ¶ 58)

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. *Reach Acad. for Boys & Girls, Inc. v. Delaware Dep't of Educ.*, 46 F. Supp. 3d 455, 464 (D. Del. 2014).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirement that the complaint include "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Armano v. Martin*, 703 Fed. Appx. 111, 112 (3d Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); Fed. R. Civ. Proc. 8. A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Wright v. Liguori*, 2009 WL 3149777, at *4 (D. Del.).

In evaluating such a motion, a complaint is to be charitably construed, with all well-pleaded factual allegations being accepted as true, and with any reasonable inferences from those facts being drawn in favor of the non-moving party. *See Twombly*, 550 U.S. 544, 554–556 & 569 n.14 (2007); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (in determining the sufficiency of a pleading, allegations of material fact are taken as true and construed in the light most favorable to the pleader). In 2009, the Supreme Court clarified the *Twombly* pleading standard and elaborated that, to survive a motion to dismiss, a civil complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679.

## **ARGUMENT**

### A.   KONA'S COUNTERCLAIMS FOR EQUITABLE ESTOPPEL AND FRAUDULENT INDUCEMENT ARE NOT REDUNDANT TO ENZC'S DECLARATORY JUDGMENT CLAIM

In support of its argument for dismissal, ENZC references the legal standard for dismissal of a *declaratory judgment counterclaim*—which is not what Kona has asserted. (D.I. 45 at 6 (citing

*Peloton Interactive, Inc. v. ICON Health & Fitness, Inc.*, 2021 WL 3794829, at *2 (D. Del. Aug. 26, 2021) for proposition that "a court may justify dismissal when 'there is a complete identity of factual and legal issues between the complaint and the counterclaim.'") Rather, Kona has asserted two distinct tort counterclaims seeking damages that go beyond the scope of facts and legal issues raised in the Complaint. As this Court has previously observed, restraint should be exercised in dismissing counterclaims unless there is "no doubt that they will be that they will be rendered moot by adjudication of the main action." *PHL Variable Ins. Co. v. Helene Small Ins. Tr. ex rel. Wilmington Sav. Fund Soc., FSB*, 2012 WL 5382905, at *1 (D. Del. Nov. 1, 2012); *see also Peloton*, 2021 WL 3794829, at *1. That is not the case here.

1.     **The Factual and Legal Issues Raised in ENZC's Complaint for Declaratory Judgment are Not Completely Identical to the Factual and Legal Issues Raised in Kona's Tort Causes of Action in the SACC.**

Redundancy requires a *complete* identity of factual and legal issues. ENZC's Complaint only seeks a declaration ENZC does not owe any contractual duty to Kona under the Note and costs and expenses related to this litigation (D.I. 1 at 10, Prayer for Relief). The Court's adjudication of ENZC's declaratory judgment claim will involve interpreting the contractual language of the Note and analyzing the narrow set of facts that ENZC pleads concerning Kona's attempted conversions.

To the contrary, the SACC asserts two tort claims for equitable estoppel and fraudulent misrepresentation. Adjudication of these claims involves unique issues of fact and law that go far beyond those raised by the Complaint. Kona alleges that ENZC worked with the Insider Debtholders to create debt in the Company and other classes of stock on extremely favorable terms, and in some circumstances, unlawful terms (D.I. 40 at ¶¶ 36-40). Kona alleges that in November of 2020, ENZC converted the debt held by the Insider Debtholders into shares of ENZC while, at the same time, making false representations to Kona with the intent to delay Kona from converting

its debt until after the Merger. (*Id.* at ¶¶ 49-58) Kona alleges that this conduct caused it monetary damages and deprived it standing to bring a derivative action. (*Id.* at ¶ 59-65) None of these facts are alleged in the Complaint or relate to the relief sought by ENZC.

It should also come as no surprise that the relief sought by Kona necessarily implicates distinct principles of tort law that will not be raised in ENZC's declaratory judgment claim. *See Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Tr.*, 674 F. Supp. 2d 562, 567 (D. Del. 2009) (counterclaim sought additional declarations implicating new facts and principles of agency law that would not necessarily be raised in adjudicating the plaintiff's claim). To illustrate this point, the Court needs to look no further than the Motion itself where ENZC, albeit in its "Statement of Facts," presents its argument as to why it is entitled to a declaratory judgment: "Kona, however, does not (because it cannot) allege or demonstrate in the SACCs that it delivered notice to ENZC's CEO or in compliance with the Note's clear requirements." (D.I. 45 at 4)

This is a far cry from the legal issues that are raised in the SACC. Kona's claim for equitable estoppel requires the Court to make findings on six distinct legal elements, three on the part of the party estopped, and three on behalf of the party asserting estoppel. *Rich v. Orlando,* 128 A.D.3d 1330, 1331, 7 N.Y.S.3d 754 (2015). And four distinct legal elements concerning Kona's claim for fraudulent misrepresentation. *Oxford Health Plans (N.Y.), Inc. v. Biomed Pharms., Inc.*, 181 A.D.3d 808, 812 (N.Y. App. Div. 2nd Dep't 2020). Importantly, for both claims, Kona has to demonstrate injury. It is indisputable that there is not "complete identity of factual and legal issues" between the Complaint and the SACC—which is why ENZC cites no authority to support its position in the Motion. *See Principal Life*, 674 F. Supp. 2d at 566. There is also irony in ENZC's prediction that Kona will argue there is no redundancy because the SACC seeks a different remedy from the Complaint. Which, instead of identifying pertinent fact and legal issues, is exactly the

8

argument ENZC uses in favor of redundancy, just one paragraph later. (D.I. 45 at 8) ("… which is literally the inverse argument made by ENZC in its Complaint.").

    **2.**       **Resolution of ENZC's Declaratory Judgment Claim Does Not Resolve Kona's Tort Claims or Render Its Tort Claims Moot.**

Resolution of ENZC's declaratory judgment claim would not necessarily resolve Kona's interests as presented in the SACC. A ruling adverse to ENZC on its declaratory judgment claim would merely result in a judgment that ENZC is not entitled to a judicial declaration. Kona would not be entitled to any of the affirmative relief that it is seeking in the SACC—an order compelling ENZC to convert the Note or monetary damages. (D.I. 40 at 11, Prayer for Relief). On this basis alone, the SACC raises issues beyond the scope of the Complaint, and resolution of the declaratory judgment claim would not moot Kona's claims.

A ruling in favor of ENZC on its declaratory judgment claim does not necessarily resolve Kona's interests as presented in the SACC. The SACC alleges pertinent facts that go far beyond those alleged in the Complaint *and* seeks relief that is not at issue in the Complaint. Kona must be permitted to present these facts in order to be afforded the relief that it affirmatively seeks, particularly, if the Court finds that Kona failed to tender timely written notices of conversion, as ENZC alleges. (D.I. 40 at ¶¶ 73-76)

ENZC's argument that Kona's request for damages "does not change the relevant inquiry – whether there is a complete identity of factual and legal issues between the Complaint and the SACCs[,]" is not only unsupported by any authority, it is flat out wrong. The fact that a counterclaim seeks different relief, *in addition* to raising legal issues that the Court may not reach in resolving the Complaint, matters. For example, in *Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc.*, 457 F. Supp. 1158 (E.D. Pa. 1978), the plaintiff sought a declaration about the parties' rights and obligations, including rights to certain payments, under an option agreement.

The defendant counterclaimed, alleging breach of the agreement and seeking damages for the breach. *Id.* at 1161–62. The district court held that the counterclaim was not superfluous and therefore not subject to dismissal because it sought damages "beyond the scope of the complaint" and not just declaratory relief. *See also Principal Life Ins. Co. v. Weiss*, 2009 WL 10687701, at *2 (E.D. Pa. July 30, 2009) (same).

ENZC's redundancy argument on the basis that the theories of estoppel and fraud are presented as affirmative defenses by Kona has also been rejected. In *LeMaster v. USAA Life Ins. Co.*, 1995 WL 708656 (M.D. Fla. Nov. 27, 1995), the plaintiff filed a breach of contract claim arising out of an application for life insurance benefits. While the insurer was considering the application, but before the policy was issued, the decedent had discovered he was suffering from a form of cancer, which rendered untrue several statements in his application. The defendant insurer filed a declaratory judgment counterclaim seeking an order that the policy was rescindable, had been rescinded, and for costs. The plaintiff filed a motion to strike the counterclaim and raised the same arguments for redundancy that ENZC does here. The district court declined the motion because the counterclaim sought "affirmative relief of costs and equitable remedies as opposed to mere affirmative defenses which are used to negate liability." *Id.* at *3. The district court also found, pertinently, that the "matter sought to be omitted has a relationship to the controversy and that [the defendant] could succeed under a set of facts which it could prove." *Id.*

Nor is any aspect of the SACC a mirror image of the Complaint. As described above, the SACC asserts two distinct tort claims and alleges facts to support those claims that are not relevant to the adjudication of the declaratory judgment claim asserted by ENZC. The Complaint says nothing about the deceitful and dishonest (*i.e.*, fraudulent) actions that ENZC took to bring about a particular result that caused injury to Kona (*i.e.*, preventing Kona from a lawful conversion of

the Note). Neither do the remedies sought mirror one another. *See Id.* ("the remedies sought by [defendant] are not 'mirror images' of [p]laintiff's request for life insurance benefits, attorneys costs and other damages.").

In support of its redundancy argument, ENZC primarily relies on one decision, this Court's dismissal of a declaratory judgment counterclaim in *Peloton*, 2021 WL 3794829. *Peloton* is distinguishable for several reasons. First, the plaintiff in *Peloton* filed an action alleging violations of the Defend Trade Secrets Act ("DTSA"). In response, the *defendant* filed declaratory judgment counterclaims seeking specific declarations on each and every element of the DTSA claim asserted by plaintiff. This distinction—ignored in the Motion—is important, because that is the basis for the Court's conclusion that, "[defendant] does not explain how its requests for specific declarations are not rendered moot by an adjudication of the DTSA dispute, which is the only "case or controversy…" and "[that defendant's] theory would permit all mirror-image declaratory judgment counterclaims to proceed where the claims alleged contain multiple elements (as is almost always the case)." *Peloton*, 2021 WL 3794829, at *2. Here, Kona has asserted two claims arising out of tort that, as described above, include distinct facts and legal issues from the narrow judicial declaration sought by ENZC.

Second, in *Peloton*, the counterclaim asserted was a mirror image of the plaintiff's claim under the Defend Trade Secrets Act ("DTSA"). Specifically:

> Peloton's complaint alleges (1) that the Peloton Advertising Plans are trade secrets under the DTSA; (2) that Peloton took reasonable efforts to secure the Plans; (3) ICON acquired the Plans via "improper means;" and (4) ICON had reason to know it was improperly in possession of proprietary information. ICON's counterclaim states that (1) ICON did not engage in misappropriation of Peloton's trade secrets; (2) the Plans are not trade secrets; (3) Peloton did not use "reasonable measures" to keep the Plans secret; and (4) ICON did not acquire the Plans via improper means.

*Id.* (citations omitted) As described above, this is not the case here as Kona alleges facts and seeks relief that goes well beyond the facts and legal issues raised in the Complaint. *Compare* (D.I. 1 ¶¶ 36-41) (ENZC's allegations concerning Kona's attempts to convert the Note in November 2020) *with* (D.I. 40 ¶¶ 36-40, 50-58) (Kona's allegations concerning ENZC and the Insider Debtholders' unlawful scheme to create and convert debt for shares of the publicly traded entity on favorable terms and ENZC's false representations concerning conversion)

Third, in *Peloton*, the defendant could not explain why its specific declarations were not rendered moot by an adjudication of the DTSA dispute. Kona has done so, as described above.

**B.    KONA PLAUSIBLY PLEADS THAT ENZC MADE FALSE REPRESENTATIONS AND CONCEALED MATERIAL FACTS FROM KONA TO SUPPORT ITS COUNTERCLAIMS**

ENZC strains to contend that the SACC fails to state a claim for relief as to its counterclaims, but its arguments are meritless. The SACC plausibly pleads that Ray made false representations to Aiello concerning ENZC's inability to initiate conversions until November 26, 2020 at the earliest, the extra-contractual requirement for an opinion letter prior to any conversion, and that certain delays were attributable to Ray's "situation." (D.I. 40 ¶ 73) These materially false statements were deceitfully made to lull Kona into delaying its attempts to convert the Note until after the Merger was consummated—which ENZC knew was imminent (but Kona did not). (*Id.* at ¶ 55; Ex. H)

In Ray's November 16, 2020 email to Aiello, he provides unsolicited substantive feedback regarding the interest calculations that Kona included in its tendered notices, (*Id.* at ¶ 48; Ex. G ("[t]he accrued interest on the disclosure statement is the life of the loan accrual. So you do [sic] not need to calculate interest."),) and, for the first time, makes the extra-contractual demand for an opinion letter to effectuate the conversion. (*Id.*) Further, Ray states that he would need to "finish the filings to remove the stop sign before an attorney will issue an opinion letter" because

apparently "the initial funding" required the Company to "stand still for 30 days on any conversions." (*Id.*) Consequently, the earliest Kona "could get this done is 11-26 but at the pace Jona is turning the [sic] will probably be 12-10 before everything is filed…" (*Id.*)

As the SACC alleges, these statements were false, as the Insider Debtholders were permitted conversions during the time period Ray said that ENZC could not initiate them. (*Id.* at ¶¶ 55, 73, 75, 76, 84) When these false representations were made, ENZC was well-aware that the Company was in the process of effecting the Merger and that Kona would not be able to initiate conversions after November 26, 2020. (*Id.* at ¶ 75) In fact, and perhaps most galling, Ray sent the email informing ENZC that it could not initiate conversions until November 26, 2020 at the earliest—which was outright false—*on the same day* that the Merger was being consummated. (*Id.* at ¶¶ 48, 55 (Ex. G, H)) In reality, Kona would have been required to tender a notice of conversion promptly, and not in a matter of weeks, in order to convert its debt. (*Id.* at ¶ 75) Those are the real facts, and they are alleged in the SACC. (*Id.*)

Including superfluous and distracting aspersions, ENZC spends over a page of argument addressing allegations that Kona does not even make. Kona does not allege in the SACC that ENZC had an affirmative obligation to provide Kona with notice of the Merger. (*Id.* at ¶ 73) But, when presented with Kona's conversions, ENZC had an obligation not to lie. Which is what ENZC chose to do. The SACC alleges that ENZC made false representations concerning the Company's ability to initiate conversions and the requirements for a conversion while the Insider Debtholders were permitted to convert their debt for valuable stock in the publicly traded company. (*Id.* at ¶ 73-75)

Kona also alleges that the false representations made by ENZC concealed material facts. It is hard to come up with facts that are more material for a conversion of debt than the timing under

13

which the Company can initiate the conversion and the requirements for the debtholder to meet in effectuating the conversion. (*Id.*)

## C.  KONA PLAUSIBLY PLEADS JUSTIFIABLE RELIANCE ON ENZC'S FALSE MISREPRESENTATIONS

### 1.  Kona Alleges that Ray Acted with Authority or Apparent Authority on Behalf of ENZC.

As set forth in the SACC, Ray held himself out as an officer of ENZC, or was acting as a *de facto* officer for ENZC in his communications with Kona. (*Id.* at ¶ 68) At Cotropia's request, Ray was on the initial October 9, 2020 telephone call with Cotropia and Zhabilov to discuss financing opportunities for ENZC. (*Id.* at ¶¶ 42, 43; Ex. B) In response to a text message sent from Aiello to Cotropia, Ray advised, in an email dated October 27, 2020, with Cotropia and Zhabilov as recipients, that "[Cotropia] and [Zhabilov] have asked me to handle the funding responses[,]" and to "[p]lease make sure that all future communications are copied to me." (*Id.* at ¶ 44; Ex. C) Indeed, Ray did not specify that only "funding" requests should be directed to him, as ENZC misleadingly suggests. (D.I. 45 at 12).

Cotropia and Zhabilov were recipients of Ray's October 27, 2020 email and did not disavow Ray's express assertion of authority. Under New York law, a "principal's silence in the face of an agent's actions can be sufficient to create apparent authority." *Amusement Indus. v. Citigroup Global Mkts. Realty Corp.*, 421 B.R. 659, 681 (S.D.N.Y. 2009). "A principal can become bound by unauthorized acts through ratification, and ratification can occur by silence. The principal's duty, upon learning of an agent's unauthorized act, is to disavow or repudiate his agent's conduct in a reasonable time after information of the transaction if he would avoid responsibility thereof." *Nat. Trends v. Krimson Corp.*, 1994 WL 97058, at *26 (S.D.N.Y. Mar. 23, 1994) (cleaned up).

ENZC never disavowed Ray's October 27, 2020 expression of authority. Based on ENZC's actions (and inactions), Kona tendered written notices of conversion to Ray and Zhabilov on

14

November 14 and 15, 2020. (D.I. 40 ¶¶ 45-46) Instead of remaining silent or directing Aiello elsewhere, ENZC, through Ray, advised Aiello on November 15, 2020 that "[Zhabilov] would need [*his*] help" to handle the conversion, and that Ray could not be able to provide Zhabilov with that assistance due to his "situation." (*Id.* at ¶ 47; Ex. F) (emphasis added) Zhabilov was *again* a recipient to this communication, and said nothing. Zhabilov's silence constitutes ratification. *See Mun. Corp. v. Citigroup Global Mkts. Inc.*, 555 F. App'x. 85, 88 (2d Cir. 2014) ("[A] principal cannot deny the apparent authority of its agent when it remains 'silent when [the principal] had the opportunity of speaking and when he knew or ought to have known that his silence would be relied upon, and that action would be taken or omitted which his statement of truth would prevent …'"). This is particularly true in the context of a business transaction. *See In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 526-527 (E.D.N.Y. 1944) ("Under New York law, a duty to speak arises in a business transaction where one party possesses superior knowledge not readily available to the other and knows that the other is acting on the basis of mistaken knowledge.").

The next day, Ray provided a further response, this time providing substantive feedback to the interest calculation provided in the tendered notices, (D.I. 40 ¶ 48; Ex. G,) advising that *he* had a call into an individual named Tiffany to confirm the need for an opinion letter, and that *he* would need to "finish the filings to remove the stop sign before an attorney will issue an opinion letter." (*Id.*) For reasons unknown, but from which inferences can easily be drawn, Zhabilov was not a recipient to this communication.

To the extent ENZC disputes the well-pleaded allegations made in the SACC (which it does), or the contents of Ray's emails and his intent behind the words on the page (which it does), such factual disputes are not appropriately resolved on a motion to dismiss and should be the subject of discovery. *Huber Engineered Woods LLC v. Louisiana-Pac. Corp.*, 2022 WL 18707841,

at *6 (D. Del. Nov. 17, 2022), report and recommendation adopted, 2022 WL 18705809 (D. Del.
Dec. 12, 2022); *see also In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 463-
464 (E.D.N.Y. 2007) ("[t]he existence of apparent authority is normally a question of fact, and
therefore inappropriate for resolution on a motion for summary judgment."); *Kirschner v. KPMG
LLP*, 938 N.E.2d 941, 963 n.3 (N.Y. 2010) (Ciparick, J. (dissenting)) (citing *Hallock v. State*, 474
N.E.2d 1178, 1181-82 (N.Y. 1984) (the existence of "apparent authority" depends upon a factual
showing)). At the pleading stage, all reasonable inferences must be drawn in Kona's favor. *See
HSMY, Inc. v. Getty Petroleum Mktg., Inc.*, 417 F. Supp. 2d 617, 620 (D. Del. 2006). Kona has
sufficiently pleaded that Ray either was an officer of ENZC, or a *de facto* officer, acting with
apparent authority on behalf of ENZC.

### 2.    Kona Alleges that It Justifiably Relied on Ray's False Representations.

"Reasonable reliance is a fact-specific inquiry generally considered inappropriate for
determination on a motion to dismiss…" *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp.
3d 393, 461–62 (S.D.N.Y. 2018). Misstatements are actionable if the plaintiff's reliance upon the
information [is] foreseeable." *Id.* (citing *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust
Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).  "There must be knowledge or its equivalent on the
defendant's part that the information is desired for a serious purpose, that the plaintiff intends to
rely and act upon it, and that if the information is false or erroneous, he will suffer injury." *Id.*
Such "issues of proximate cause are often fact-laden, requiring a fully developed factual record,
and not a bare-bones motion to dismiss." *Bank Midwest, N.A. v. Hypo Real Estate Capital Corp.*,
2010 WL 4449366, at *4 (S.D.N.Y. Oct. 13, 2010).

Kona's reliance on the information that ENZC provided to it regarding the Company's
ability to initiate conversions, the timing for conversions, and the need for an opinion letter was
foreseeable. At the time, the Company was private, and the only source of information that Kona

could receive concerning the conversion of debt came directly from the Company. Kona had no way to discover the "true nature" of the information provided through the exercise of ordinary intelligence, additional diligence, or some other independent means. *See IKB Int'l S.A. v. Morgan Stanley*, 142 A.D.3d 447, 449 (N.Y. App. Div. 1st Dep't 2016) (plaintiffs plausibly pleaded justifiable reliance by alleging that defendants knowingly made misrepresentations and that plaintiffs analyzed the information that it had access to); *Tanzman v. La Pietra*, 8 A.D.3d 706, 707 (N.Y. App. Div. 3rd Dep't 2004).

The SACC sufficiently alleges that ENZC, through Ray, understood that: the information sought was for a serious purpose—converting $150,000 of investment into equity, (D.I. 40 ¶ 30,) Kona would rely and act on it—because Kona had to, (*Id.* at ¶¶ 52, 53, 77, 86,) and if the information was false, which it was, Kona would suffer injury. (*Id.* at ¶¶ 52, 53, 56, 59, 77, 79, 86, 88) The SACC also sufficiently alleges that Kona relied on ENZC's false representations. (*Id.* at ¶¶ 78, 80, 87, 89) In fact, in his November 15, 2020 communication to Ray and Zhabilov Aiello closed by writing "[h]opefully, my emails will be sufficient evidence of my request to the enclosed conversion of the portion of the debts owed." (*Id.* at ¶ 46; Ex. E). In response, Ray made false representations, and Zhabilov remained silent. *See ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043, 1045 (N.Y. 2015) (plaintiff sufficiently alleged justifiable reliance, where it "alleged that it sought assurances from defendant" and that the defendant responded with affirmative misrepresentations).

## D. KONA PLAUSIBLY PLEADS THAT IT CHANGED ITS POSITION TO ITS DETRIMENT, WHICH CAUSED ITS INJURY

As a consequence of Ray's false representations in his emails of November 15 and 16, 2020, Kona justifiably believed, wrongly, that Kona had to submit an opinion letter in support of its conversion and that it had to wait, at least until November 26, 2020, for a conversion to be initiated. In addition, that Ray would not be able to "handle" the issue at the present time due to

his "situation." (D.I. 40 ¶ 54; Ex. H) So Kona, convinced that nothing further could be done for at least 10 days, did nothing—which reflects a change in its position to acting on the delay, as compared to the back-to-back days of emails sent by Aiello to Ray before the false representations were made. (*Id.* at ¶¶ 45-46; Ex. D, E); *see Besicorp Grp. Inc. v. Enowitz*, 652 N.Y.S.2d 366, 369 (3rd Dep't 1997) (characterizing failure to assert a contractual right based upon reliance on counter-party's assertions as a change in position that could not be resolved on summary judgment). This change in position resulted in a detriment as the Merger was consummated during the time period in which Kona was waiting and Kona's debt was never converted. (D.I. 40 ¶ 55; Ex. H)

Neither should the Court consider ENZC's argument that Kona did not comply with the notice requirements of the Note in determining whether the SACC contains plausible allegations that ENZC made false representations and concealed material facts. Not only is this argument irrelevant and an obvious attempt to distract the Court, but the false representations were made *before* the Merger was consummated when, assuming ENZC is right in its argument that Kona failed to comply with the notice requirements of the Note, Kona could have still corrected its notice and complied with the pertinent provisions. ENZC—a party that is alleged to have made false representations of fact—should never be given that benefit of doubt.

## E.   ENZC'S REQUEST THAT KONA NOT BE PERMITTED ANY FURTHER AMENDMENTS TO ITS COUNTERCLAIM IS PREMATURE

Federal Rule of Civil Procedure 15(a) provides that "leave [to amend] shall be freely given when justice so requires." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Supreme Court has cautioned that although "the grant or denial of an opportunity to amend is within the discretion of the District Court, … outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of that discretion; it is merely an

abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Futility is one factor that could justify a denial to amend. But nothing before the Court suggests that any additional amendment to Kona's counterclaim would be futile. On brand with the rest of ENZC's arguments, ENZC fails to provide any authority to support its position that just because Kona's counterclaim has been amended once following an adjudication on the merits, that all future amendments to its pleading should be unequivocally denied. ENZC's blanket argument that Kona should not be permitted to amend its counterclaim is rapacious.

## **CONCLUSION**

For the reasons set forth herein, Kona respectfully request that ENZC's Motion be denied in its entirety. If the motion is granted in any part, Kona respectfully requests that the Court to grant it leave to amend its Complaint.


Dated: March 28, 2023

/s/ Kaan Ekiner
Kaan Ekiner (#5607)
COZEN O'CONNOR
1201 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 295-2046
kekiner@cozen.com

John J. Muldoon III (*pro hac vice*)
MULDOON & MULDOON, LLC
111 West Washington Street
Suite 1500
Chicago, IL 60602
(312) 739-3550
jjm@muldoonlaw.com

*Attorneys for Defendant/Counterclaim
Plaintiff Kona Concepts, Inc.*

19